IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRADLEY C. BIRKENFELD<br>FPC Schuylkill<br>PO Box 670<br>Minersville, PA  17954<br>570·544-1100<br><br>                    Plaintiff,<br><br>     v.<br><br>SCHERTLER & ONORATO<br>575 7th Street, NW<br>Suite 300 South<br>Washington, DC  20004<br><br>DAVID SCHERTLER<br>575 7th Street, NW<br>Suite 300 South<br>Washington, DC  20004<br><br>DANNY ONORATO<br>575 7th Street, NW<br>Suite 300 South<br>Washington, DC  20004<br><br>DAVID DICKIESON<br>575 7th Street, NW<br>Suite 300 South<br>Washington, DC  20004<br><br>PETER V. TAYLOR<br>c/o United States Attorney's Office<br>555 Fourth Street, NW<br>Washington, DC  20530<br><br>                    Defendants. | Case Number:_____ |

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

<u>NATURE OF ACTION</u>

1.   Bradley C. Birkenfeld ("Plaintiff") is a former Senior Client Advisor at UBS AG and is widely known as the Whistleblower who exposed UBS AG along with 19,000 United States clients in a conspiracy to evade taxes.  Plaintiff brings this action to redress injuries he suffered and continues to suffer as a result

of numerous unconstitutional acts performed by Defendants.

## PRO SE PROVISION

2.   Plaintiff relies upon Haines v. Kerner, 404 US 519, 520 (1972) in that pro se filings be liberally construed since Plaintiff is not proficient in law.  See also: National Asso. For Community Development v. Hodgson, 356 F.Supp 1399 (D.Dc. 1973).

## PARTIES

3.   Bradley C. Birkenfeld is a United States citizen who resided at 3920 Zermatt, Switzerland.  He was employed as a Senior Client Advisor at the Geneva office of UBS AG.

4.   Schertler & Onorato, LLP, is, or at the time of events at issue was, a limited liability partnership which was formed to provide legal services in the District of Columbia.

5.   David Schertler, is, or at the time of events at issue was, an employee, partner, agent, and/or representative of Schertler & Onorato.  Defendant is licensed to practice law in the District of Columbia and maintains his primary office within the District of Columbia.

6.   Danny Onorato, is, or at the time of events at issue was, an employee, partner, agent, and/or representative of Schertler & Onorato.  Defendant is licensed to practice law in the District of Columbia and maintains his primary office within the District of Columbia.

7.   David Dickieson, is, or at the time of events at issue was an employee, partner, agent, and/or representative of Schertler & Onorato.  Defendant is licensed to practice law in the

District of Columbia and maintains his primary office within the District of Columbia.

8. Peter V. Taylor, at the time of events at issue was, an employee, partner, agent, and/or representative of Schertler & Onorato. Defendant is licensed to practice law in the District of Columbia and continues to maintain an office within the District of Columbia.

## JURISDICTION AND VENUE

9. This action arises under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 US 388 (1971).

10. This Court has jurisdiction over this matter pursuant to 28 USC §§ 1331, 1343, 1346, and 2201.

11. Venue is proper in this District pursuant to 28 USC § 1391 because the events giving rise to the claim occurred in the District of Columbia and all Defendants are primarily employed within said District.

## TOLLING

12. D.C. Code § 12-302(a)(3) provides that when a person is imprisoned at the time his right of action accrues "He or his proper representative may bring action within the time limited after the disability is removed." Therefore, this provision has been interpreted to require tolling of the statute of limitations until Plaintiff's release from confinement. La Gon v. Barry, 65 F.Supp 55, 58-59 (D.Dc. 1987).

## FACTUAL BACKGROUND

13. On October 2, 2001, Plaintiff began employment as a

Senior Client Advisor at UBS AG.

14. Plaintiff was based out of the Geneva, Switzerland, offices of UBS AG.

15. Plaintiff's job description consisted of acquiring and maintaining United States clients on behalf of UBS AG.

16. On or about May 15, 2005, Plaintiff discovered an intranet legal document on UBS AG's internal website titled "Cross-Border Banking Activities into the United States (Version November 2004)."

17. Upon reading said legal document, Plaintiff was deeply concerned and sought advice from various key UBS AG employees and executives.

18. On June 17, 2005, Plaintiff sent an inter-office memorandum to Rene Wuthrich, head of UBS AG Legal Department, and Philipp Frey, head of UBS AG Compliance Department. The purpose of said Memorandum was to question Plaintiff's contractual duties with UBS AG Policies and United States law.

19. Plaintiff never received a response from either Wuthrich or Frey.

20. On June 24, 2005, Plaintiff sent an email to both Wuthrich and Frey regarding a follow up to the correspondence of June 17, 2005.

21. Plaintiff never received a response from either Wuthrich or Frey.

22. On July 19, 2005, Plaintiff sent another email to both Wuthrich and Frey regarding a follow up to the correspondence of June 17, 2005.

23. Plaintiff never received a response from either Wuthrich or Frey.

24. On August 15, 2005, Plaintiff sent another email to both Wuthrich and Frey regarding a follow up to the correspondence of June 17, 2005.

25. Plaintiff never received a response from either Wuthrich or Frey.

26. UBS AG Senior Management, Legal, and Compliance, all failed to respond to Plaintiff's repeated requests for compliance regarding Plaintiff's contractual duties with UBS AG Policies and United States law.

27. On or about September 15, 2005, Plaintiff sought legal advice from two (2) Geneva-based lawfirms seeking their interpretation of the UBS AG Legal Document and Plaintiff's contractual duties with UBS AG Policies and United States law.

28. On or about September 20, 2005, Plaintiff personally met with an attorney representing Secretan & Troyanov (Geneva office). It was the lawfirm's opinion that UBS AG's three (3) page Legal Document conflicted with Plaintiff's contractual duties as a Senior Client Advisor and United States law. Furthermore, they also advised Plaintiff to resign as well.

29. On or about September 30, 2005, Plaintiff personally met with an attorney representing Kostenbaum & Associates (Geneva office). Said firm's opinion mirrored the opinion provided by Secretan & Troynov.

30. On October 5, 2005, Plaintiff provided an official letter of resignation to Christian Bovay, Managing Director, UBS AG, indicating his immediate resignation which was accepted.

31. On October 10, 2005, Plaintiff personally met with Bovay and Monika Boesch, Human Resource Representative, UBS AG. The purpose of said meeting focused on Plaintiff's resignation from UBS AG. During said Meeting, Plaintiff again recited his main concerns about the UBS AG three (3) page Legal Document and how it conflicted with Plaintiff's daily duties as a Senior Client Advisor at UBS AG (Geneva office).

32. Bovay and Boesch failed to provide a substantive response to Plaintiff's demand.

33. On March 17, 2006, Plaintiff envoked his rights, in writing, to Peter Kurer, Group General Counsel, UBS AG, pursuant to all three (3) UBS AG Whistleblower Policies [Group Policy, Corporate Center, and Wealth Management & Business Banking Supplementary Document]. This two (2) page complaint outlined Plaintiff's ongoing concerns regarding the UBS AG three (3) page Legal Document and Plaintiff's contractual duties in relation to United States law.

34. On March 30, 2006, Plaintiff, along with his Geneva-based Legal Counsel, personally met with Christopher de Courten, Executive Director Legal Counsel, UBS AG, and Bernhard Schmid, Managing Director General Counsel Corporate Center, UBS AG, regarding Plaintiff's three (3) UBS AG Whistleblower Complaints.

35. Shortly therafter, Plaintiff began a long an often tedious journey of preparing to expose UBS AG to the United States government. A major initial hurdle Plaintiff encountered was to retain United States counsel in order to protect Plaintiff's interests. Since UBS AG at that time was the world's largest

bank, it retained countless United States lawfirms and UBS AG's acquisition of Paine Webber only further complicated an infinite number of conflicts-of-interest with prospective lawfirms.

36. On or about February 14, 2006, Plaintiff met with Defendant David Schertler who was a partner with Schertler & Onorato, LLP. During the initial meeting, Defendant Schertler boasted to Plaintiff that their firm had excellent contacts within the United States Department of Justice.

37. Plaintiff decided to retain said firm based upon Defendant Schertler's above-stated comment.

38. From February 26, 2006 through May 1, 2007, Plaintiff was burdened with many complicated tasks which consumed a vast quantity of Plaintiff's time and personal finances since Plaintiff had to aggregrate extensive internal UBS AG confidential documentation, organize multiple trips from Geneva to Washington DC (often having to travel in a clandestine manner in order to avoid detection from UBS AG and/or Swiss officials) and debrief and educate legal counsel as to the magnitude and complexity of Plaintiff's multiple allegations.

39. On June 12, 2007, per the advice of Defendant Schertler, Plaintiff voluntarily met with Kevin M. Downing, Trial Attorney, United States Department of Justice, Karen E. Kelly, Trial Attorney, United States Department of Justice, and Matthew J. Kutz, Special Agent, Internal Revenue Service.

40. During said meeting, Plaintiff requested that the United States Department of Justice provide Plaintiff with a subpoena due to the fact that Plaintiff would be violating Swiss law.

41. The Department of Justice refused Plaintiff's request for a subpoena.

42. Plaintiff did voluntarily continue to meet with Downing, Kelly, and Kutz.

43. On June 21, 2007, Plaintiff personally hand-delivered over four hundred (400) pages of internal UBS AG confidential documents to Downing, Kelly, and Kutz.

44. Plaintiff then initiated contact with the United States Senate and the United States Securities and Exchange Commission.

45. On October 9, 2007, Plaintiff was issued a Subpoena (#E02731) by the Senate Committee on Homeland Security and Government Affairs to appear before them on October 11, 2007. The purpose of Plaintiff's testimony was focused on UBS AG and Swiss bank secrecy.

46. On November 14, 2007, Plaintiff personally met with Thomas D. Silverstein, Branch Chief, Division of Enforcement, United States Securities and Exchange Commission. Also present was Laura B. Josephs, Assistant Director, Division of Enforcement, United States Securities and Exchange Commission. The purpose of said Meeting was to provide extensive testimony, internal strategies, and confidential documentation regarding UBS AG and Swiss bank secrecy.

47. On May 6, 2008, Plaintiff flew from Geneva, Switzerland, to Boston and was promptly arrested by United States authorities at Logan International Airport.

48. Plaintiff was subsequently released and was requested by Downing to meet with him at his office in Washington DC on May 8, 2008.

49. On May 8, 2008, Plaintiff personally met with Downing, Kutz, Michael P. Ben'Ary, Trial Attorney, United States Department of Justice, and Jeffrey A. Neiman, Assistant United States Attorney, Southern District of Florida.

50. The purpose of said Meeting was to debrief the United States Department of Justice and towards the conclusion of said Meeting, Plaintiff stated to Downing "Now that this meeting is coming to an end, I will go over to the United States Senate and the SEC to follow up on earlier pre-arranged meetings[1].

51. Downing stood, pointed at Plaintiff, and yelled "You will not meet or speak to anyone from the United States Senate or the SEC!"

52. Defendant Danny Onorato was personally present during the above-mentioned events.

53. Defendant Onorato made no response to Downing.

54. On July 3, 2008, Plaintiff received an email from Onorato that Robert Roach, Counsel and Chief Investigator, United States Senate, Permanent Subcommittee on Investigations, wanted Plaintiff travel to Washington DC to continue with Plaintiff's testimony before a United States Senate Subcommittee. (Copy attached as Exhibit 1 - Email from Defendant Onorato to Plaintiff dated July 3, 2008).

55. In the end of the email, Defendant Onorato stated that "Kevin [Downing] knows we are going to meet." (Exhibit 1).

56. Plaintiff responded to Defendant Onorato's email stating that he would be delighted to follow up with Robert Roach

---

[1] On May 6, 2008, Plaintiff was flying to the United States for prearranged follow up meetings with the Senate and the SEC.

and his colleagues, however, Plaintiff was concerned that this would be in a direct conflict with Downing's demand not to speak to anyone from the Senate and/or SEC. (Exhibit 1).

57. Furthermore, Plaintiff advised Defendant Onorato that he was planning to meet with the Senate and SEC when he flew back in the United States on May 6, 2008, however, Plaintiff was arrested. (Exhibit 1).

58. Approximately two (2) months after the obstruction and shortly thereafter the email of July 3, 2008, Plaintiff met with the Senate and provided further extensive testimony, internal strategies, and confidential documentation of UBS AG and Swiss bank secrecy.

59. Plaintiff was never permitted to further speak with the SEC regarding UBS AG and Swiss bank secrecy after the obstruction.

60. At no time did Defendants make any attempt to remove the obstruction or report it to proper authorities.

## INJURY TO PLAINTIFF

61. As a direct and proximate result of Defendants actions, Plaintiff has suffered, and in the future will continue to suffer from economic loss, humiliation, embarrassment, and mental and emotional distress.

62. Plaintiff's injuries were significantly exacerbated because the Defendants, in concert, committed a clear violation of 18 USC § 1505 by precluding Plaintiff to further testify before the United States Senate Subcommittee.

63. Plaintiff's injuries were significantly exacerbated because the Defendants, in concert, committed a clear violation

of 18 USC § 1505 by precluding Plaintiff to further testify before the Securities and Exchange Commission.

64. Plaintiff's injuries were significantly exacerbated because the Defendants, in concert, committed a clear violation of 18 USC § 1512 by tampering with Plaintiff who was clearly in the role of being a witness, victim, or an informant before an investigation being conducted by the United States Senate Sub-committee.

65. Plaintiff's injuries were significantly exacerbated because the Defendants. in concert, committed a clear violation of 18 USC § 1512 by tampering with Plaintiff who was clearly in the role of being a witness, victim, or an informant before an investigation being conducted by the United States Securities and Exchange Commission.

## COUNT I

### FIRST AMENDMENT

66. Plaintiff realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 65 above.

67. The foregoing actions by Defendants constitute a violation of Plaintiff's right of freedom of speech and being permitted to communicate freely with the United States Senate, guaranteed by the First Amendment to the United States Constitution.

## COUNT II

### FIRST AMENDMENT

68. Plaintiff realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 67 above.

69. The foregoing actions by Defendants constitute a violation of Plaintiff's right of freedom of speech and being permitted to communicate freely with the United States Securities and Exchange Commission, guaranteed by the First Amendment to the United States Constitution.

## COUNT III

FIFTH AMENDMENT

70. Plaintiff realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 69 above.

71. The foregoing actions by Defendants constitute a violation of Plaintiff's due process rights, guaranteed by the Fifth Amendment to the United States Constitution.

## COUNT IV

42 USC § 1983

72. Plaintiff realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 71 above.

73. At all times relevant to the events described herein, Defendants were acting under color of statute, ordinance, regulation, custom, and/or usage of the United States since they were acting as an officer of the Court.

74. Through the foregoing actions, Defendants subjected Plaintiff to numerous deprivations which are guaranteed by the United States Constitution.

## COUNT V

42 USC § 1985

75. Plaintiff realleges and incorporates by reference all

of the allegations set forth in paragraphs 1 through 74 above.

**76.** At all times relevant to the events described herein, Defendants were acting under color of statute, ordinance, regulation, custom, and/or usage of the United States since they were acting as an officer of the Court.

**77.** Through the foregoing actions, Defendants subjected Plaintiff to numerous deprivations which are guaranteed by the United States Constitution.

## COUNT VI

42 USC § 1986

**78.** Plaintiff reallages and incorporates by reference all of the allegations set forth in paragraphs 1 through 77 above.

**79.** At all times relevant to the events described herein, Defendants were acting under color of statute, ordinance, regulation, custom, and/or usage of the United States since they were acting as an officer of the Court.

**80.** Through the foregoing actions, Defendants subjected Plaintiff to numerous deprivations which are guaranteed by the United States Constitution.

## COUNT VII

FOURTEENTH AMENDMENT

**81.** Plaintiff realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 80 above.

**82.** The foregoing actions by Defendants constitute a violation of Plaintiff's equal protection of United States law, guaranteed by the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

83. WHEREFORE, Plaintiff prays that this Court GRANT him the following relief:

(a) enter a declaratory judgment finding that the foregoing actions of Defendants violate the First, Fifth, and Fourteenth Amendments to the United States Constitution and 42 USC §§ 1983, 1985, and 1986;

(b) award compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiff for the economic loss, humiliation, embarrassment, and mental and emotional distress caused by the conduct of Defendants alleged herein;

(c) award punitive damages to the Plaintiff in an amount to be determined by the jury that would punish Defendants for their willful, wanton, self-serving, and reckless conduct alleged herein and that would effectively deter Defendants from engaging in similar conduct in the future;

(d) award Plaintiff his reasonable attorneys' fees and costs in the event Plaintiff retains legal counsel for representation regarding this matter, and

(e) order such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury as to all issues in this case.

Dated this _____ day of         Respectfully submitted,

_____, 20____.

*Bradley C. Birkenfeld*
Bradley C. Birkenfeld
Plaintiff, pro se
Federal Prison Camp
Post Office Box 670
Minersville, PA  17954-0670

EXHIBIT 1

EMAIL FROM DEFENDANT ONORATO TO PLAINTIFF

DATED JULY 3, 2008

# Melanie Radcliff

| | |
|---|---|
| From: | Brad Birkenfeld [bbirkenfeld@hotmail.com] |
| Sent: | Thursday, July 03, 2008 5:33 PM |
| To: | Danny Onorato |
| Cc: | David Schertler; David H. Dickieson |
| Subject: | RE: Court Documents - UBS |

Dear Danny,

I would be delighted to have a follow-up meeting with Bob Roach and his colleagues (as met with them last year). I was told directly by Kevin Downey NOT to speak/meet with him or Ted at the SEC. I just want to ensure all is 100% ok. You let me know the next steps. FYI, I was planning to meet with them (with David Dickieson) when I came back in early May to the USA until I got arrested.

Regards,

Brad

> Subject: Re: Court Documents - UBS
> Date: Thu, 3 Jul 2008 10:06:22 -0400
> From: donorato@schertlerlaw.com
> To: bbirkenfeld@hotmail.com
> CC: dschertler@schertlerlaw.com; ddickieson@schertlerlaw.com
>
> Brad
>
> Bob roach wants to speak w you next week
>
> Are you able to come to dc to meet w him
>
> Kevin knows we are going to meet
>
> -----Original Message-----
> From: Brad Birkenfeld <bbirkenfeld@hotmail.com>
> To: Danny Onorato
> CC: David Schertler; David H. Dickieson
> Sent: Thu Jul 03 07:40:59 2008
> Subject: Court Documents - UBS
>
> Dear Danny,
>
> I realize you are on vacation - enjoy, but I would like to ensure I get copies of ALL the court documents submitted in Florida regarding the recent "John Doe" filings. There was quite a bit in the newspapers regarding this and I would like to have copies and read them. Please arrange for these to be sent to me. Take care and we will talk next early week. Happy 4th of July too! Thanks.
>
> Regards,
>
> Brad
>
> P.S. There was a great article on Peter Kurer in the WSJ yesterday!
>